**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SALVADOR BELTRAN, JR., and ELI GROSS, *Individually and on behalf of all others similarly situated,* | |
| *Plaintiffs*, | **Case No:** 1:22-cv-04858 |
| | **Judge:** Sara L. Ellis |
| v. | **JURY TRIAL REQUESTED** |
| SONY PICTURES ENTERTAINMENT INC., d/b/a CRUNCHYROLL | |
| *Defendant.* | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).......18

*Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023)...................................................................................................................................15

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................................7, 9

*Amgen, Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013) .........................................11

*Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360 (7th Cir. 2015) ........................................................11

*Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426 (7th Cir. 2015) .......11

*Edmondson v. Simon,* 86 F.R.D. 375 (N.D.Ill.1980)..........................................................................8

*Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394 (N.D.Ill.1987) ..............................................8

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010)........6, 7

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 18-md-02843 (N.D. Cal. July 11, 2023)...................................................................................................................................15

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45 (D. Mass. 2010) .............11

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................................................................................6

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998)...............................................................................9

*Kinder v. Meredith Corp.*, No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016)...........8

*Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736 (N.D. Ill. 2021)..............................................6

*Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017).....passim

*Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014).......................................................11

*Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008) ......................................12

*Rogers v. Baxter Int'l Inc.*, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) .......................................8

*T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022).......14

*Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170 (N.D. Ill. 2015) ................................................9

**Statutes**

18 U.S.C. § 2710 ...................................................................................................................passim

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................13, 19

FED. R. CIV. P. 23(a)......................................................................................................................8, 10

FED. R. CIV. P. 23(b)..................................................................................................................7, 8, 11

Fed. R. Civ. P. 23(c) ................................................................................................7, 19

FED. R. CIV. P. 23(e) ...............................................................................................passim

Fed. R. Civ. P. 23(g) ....................................................................................................11

**Other Authorities**

2018 Amendment Advisory Committee Notes .......................................................8, 13

Newberg § 13:50 ..........................................................................................................14

## TABLE OF CONTENTS

I.     INTRODUCTION                                                                                    1

II.    BACKGROUND                                                                                      2

    a.   The Litigation                                                                            2

    b.   Mediation and Settlement                                                                  3

III.   THE SETTLEMENT'S TERMS                                                                          4

    a.   Class Definition                                                                          4

    b.   Monetary Relief                                                                           4

    c.   Business Practice Changes                                                                 4

    d.   Release                                                                                   5

IV.    ARGUMENT                                                                                        5

    a.   The Court Will Be Able to Certify the Proposed Settlement Class                           6

       i.    The Requirements of Rule 23(a) are satisfied                                      7

       ii.   The Requirements of Rule 23(b)(3) are satisfied                                   10

    b.   The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate                   12

       i.    The Settlement Class has been vigorously represented                              12

       ii.   The Settlement was negotiated at arm's length after the exchange of informal
discovery                                                                                              13

       iii.  The Settlement provides meaningful relief to the Class                            14

       iv.   The Settlement treats Class Members equitably                                     17

       v.    Plaintiffs' counsel are highly experienced in similar litigation and their opinion
regarding Settlement is entitled to considerable weight                                                17

    c.   The Proposed Notice Plan Should Be Approved                                               17

V.     PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL                                                 19

VI.    CONCLUSION                                                                                      19

### I.     <u>INTRODUCTION</u>

Plaintiffs Salvador Beltran, Jr. and Eli Gross ("Plaintiffs"), on behalf of themselves and others similarly situated, respectfully asks the Court to approve a proposed Class Action Settlement Agreement (the "Settlement") with Crunchyroll, LLC (defined as "Defendant" for purposes of this Settlement Agreement)[1].[2]  The Settlement will fully resolve this litigation, wherein Plaintiffs allege Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by installing and running the third party tracking technology on its website, mobile applications, and video-on-demand products ("Streaming Products") thereby disclosing consumers' personally identifiable information, which the VPPA defines as including information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Under the proposed Settlement, Defendant will create a $16 million non-reversionary cash fund for the benefit of the Settlement Class.  Defendant also will agree to modify the use of the third party tracking technologies on portions of its Streaming Products relevant to VPPA compliance.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court-awarded fees, expenses, service awards, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a *pro rata* share of the Net Settlement Fund.  Plaintiffs and their counsel have vigorously prosecuted this action on behalf of the Settlement Class and—through extensive, arm's-length negotiations overseen by experienced mediator Hon. Morton Denlow (Ret.) – have developed an understanding of the strengths and weaknesses of the action.

Notwithstanding their confidence in the merits of their VPPA claim, Plaintiffs recognize the challenges and risks inherent in proceeding through litigation and proving their claims at trial.

---

[1] The Parties acknowledge that Sony Pictures Entertainment Inc. was incorrectly named as the Defendant in the above-captioned matter.  Sony Pictures Entertainment Inc. is a separate corporation from Crunchyroll, LLC and is not a party to the Settlement Agreement.
[2] The Settlement is filed concurrently herewith. Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

The challenges and risks include certification of any class, Defendant's various defenses to liability, including those arising under the statutory text and Plaintiffs' consent to various third parties' terms of use and service, as well as defenses to any recovery of damages, and other affirmative defenses.

For the reasons set forth herein, Plaintiffs respectfully request the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiffs as Class Representatives for the Settlement Class; (3) appoint Peiffer Wolf Carr Kane Conway & Wise, LLP and Bailey Glasser LLP as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Kroll Settlement Administration LLC ("Kroll") as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiffs' request for attorneys' fees and expenses.

## II.     BACKGROUND

### a.  The Litigation

This putative class action was filed on September 8, 2022. (ECF No. 1). The material allegations of the complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics, without permission in violation of Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. (the "VPPA") (ECF No. 44).

Procedurally, a First Amended Complaint was filed on October 27, 2022. (ECF No. 9). In response to the First Amended Complaint, the Parties agreed on a briefing schedule for Defendant's motion to dismiss. (ECF No. 14). On January 31, 2023, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint naming Plaintiffs Salvador Beltran, Jr. and Eli Gros, which was granted, and the Second Amended Complaint was entered on the docket. (ECF Nos. 21, 22). Throughout the fall and winter of 2022, Class Counsel and counsel for Defendant had

numerous phone calls, video meetings, and exchanged information so that each side could better understand the position of the other side relating to the underlying technologies at issue, potential merits and class certification based defenses, and the potential damages that Defendant could face if Plaintiffs were successful in litigation.

In February 2023, the Parties agreed that mediation with an experienced mediator could be helpful in attempting to reach a resolution of the matter, and a motion to stay was filed. (ECF No. 23). The Parties selected Judge Morton Denlow (Ret.) of JAMS Chicago, former United States Magistrate Judge for the Northern District of Illinois, to mediate the matter.

### b. Mediation and Settlement

As part of the mediation, and in order to competently assess their relative negotiating positions, the Parties exchanged information, including on issues such as the size and scope of the putative class, and certain facts related to the strength of Defendant's potential defenses. Given the information exchanged, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

The first day of mediation took place on April 19, 2023. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day. However, because the Parties felt they had made progress toward resolution, they agreed to extend the stay to continue their mediation efforts.

Over the next several weeks, the Parties engaged separately with Judge Denlow via phone calls and then participated in a second day of mediation with Judge Denlow. At the conclusion of the second day of mediation, the Parties felt that there was a realistic possibility of reaching a class wide settlement. Through additional rounds of arms' length negotiations, the Parties were eventually able to reach agreement on all material terms of a class action settlement.

On August 28, 2023, Plaintiffs filed a Third Amended Complaint which conformed the allegations of the Third Amended Complaint to the information learned through informal discovery. Plaintiffs now seek preliminary approval of the Settlement.

### III.     <u>THE SETTLEMENT'S TERMS</u>

#### a.   Class Definition

The Settlement defines the "Settlement Class" as:

> all persons in the United States who: (1) were registered users of an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by Crunchyroll; and (2) who viewed videos on an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by Crunchyroll during the Class Period.

Settlement, ¶ 1.30.

> Additionally, individuals excluded from the Settlement Class include:

> (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

*Id*.

#### b.   Monetary Relief

Defendant has agreed to pay $16,000,000 to create a non-reversionary Settlement Fund for the Benefit of the Settlement Class. *Id*. at ¶¶ 1.32, 2.1. Settlement Class Members who submit valid claims will receive *pro rata* monetary payment from the Settlement Fund after deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Settlement Class, any court awarded expense reimbursements, attorneys' fees, and service awards for the Class Representatives. *Id*. at ¶¶ 1.2, 2.1.

#### c.   Business Practice Changes

As part of the Settlement, Defendant has also agreed to implement meaningful business practice changes designed to remediate the alleged violations of the VPPA going forward. To wit:

> Defendant will use good faith efforts, within 45 days of the Preliminary Approval Order but in no event later than the date of the Final Judgement, to modify its use of the Facebook Pixel and other tracking pixels or tracking technologies so that use of such technologies will not result in Crunchyroll's disclosure to the technology developers of the specific video content viewed by a specific individual, unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Illinois, or an Illinois state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed. Nothing herein shall prohibit the use of the tracking pixels or other technologies where any disclosure of information does not identify specific video materials that a specific user has requested or obtained.

*Id*. at ¶ 2.2.

### d. Release

In exchange for the relief described herein, Plaintiffs and the Settlement Class shall release all claims that have or could have been asserted against Defendant relating to the facts, transactions, or events alleged in the Third Amended Complaint. *Id*., at ¶ 1.24 (Released Claims), ¶¶ 1.25-1.26 (Released Parties and Releasing Parties), ¶¶ 3.1-3.2 (Release).

## IV. ARGUMENT

"Federal courts naturally favor the settlement of class action litigation…" as settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 743–44 (N.D. Ill. 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) and *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010)).

A proposed class action settlement must be approved by a district court pursuant to the two-stage process set forth in FED. R. CIV. P. 23(e). At the preliminary approval stage, the court

must determine whether it "will likely be able to" certify the class for purposes of judgment on the proposed settlement, and finally approve the proposed settlement as "fair, reasonable, and adequate." FED. R. CIV. P. 23(e). This Court must "decide whether the proposed settlement is "within the range of possible approval." *Lechuga*, 559 F. Supp. 3d at 74. Thereafter the class will be given notice and afforded the opportunity to object to the proposed settlement, and the court will hold a hearing to consider whether to grant final approval of the settlement and certify the Settlement Class. *See*, FED. R. CIV. P. 23(e)(2), (4), (5).

In deciding whether to grant preliminarily approval, the Court must consider: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *8 (N.D. Ill. Dec. 20, 2017) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010)).

As outlined below, preliminary approval of the Settlement is warranted here. ***First***, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to rules 23(a) and (b)(3). ***Second***, the Court will likely be able to finally approve the proposed Settlement, the largest VPPA-Pixel settlement to date which provides significant monetary and injunctive relief to the Settlement Cass, as fair, reasonable, and adequate. ***Third***, the proposed notice plan satisfies the requirements of Rule 23(c)(2). Accordingly, the Court should grant Plaintiffs' motion for preliminary approval and direct notice to the Settlement Class.

### a. The Court Will Be Able to Certify the Proposed Settlement Class

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for purposes of judgment

on the proposed settlement. FED. R. CIV. P. 23(e). *see also*, 2018 Amendment Advisory Committee Notes. When analyzing certification of a settlement class, "a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is a two-step process; first, Plaintiffs must establish the four requirements of Rule 23(a); second, Plaintiffs must establish that certification is proper under one of the parts of Rule 23(b). Plaintiffs contend, and Defendant does not dispute for settlement purposes, that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).

### i. The Requirements of Rule 23(a) are satisfied

**Numerosity.** The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, the class size is more than 19 million, easily satisfying the numerosity requirement of Rule 23(a) (1).

**Commonality.** "The threshold for commonality is not high." *Rogers v. Baxter Int'l Inc.*, 2006 WL 794734, at *3 (N.D. Ill. Mar. 22, 2006). "[T]here need only be a single issue [of law or fact] common to all members of the class." *Id.* (citing *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 399 (N.D.Ill.1987) and (quoting *Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980)

Here Plaintiffs easily satisfy the commonality requirement, as many significant common questions of law and fact exist, including:

a. Whether Defendant knowingly disclosed Class Members' Personal Viewing Information to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics;

b. Whether the information disclosed to third parties concerning Class Members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

c. Whether Defendant's disclosure of Class Members' Personal Viewing Information to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics was knowing under the VPPA;

d. Whether Class Members consented to Defendant's disclosure of their Personal Viewing Information to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

e. Whether the Class is entitled to damages as a result of Defendant's conduct.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquires is Defendant's common course of conduct, *i.e.*, Defendant knowing disclosure of Class Members' private information through its use of the third party tracking technologies. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact, including the course of [defendant's] conduct with customer purchasing information and the applicability of [the Michigan Video Rental Privacy Act] to that conduct, the commonality requirement is satisfied."). Thus, commonality is satisfied.

**Typicality.** "A plaintiff's claim is typical 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members' and is based on the same legal theory." *Lucas*, 2017 WL 6733688, at *6 (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)).

Here, Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of Settlement Class Members. When a Class Member requested or obtained specific video materials from Defendant's Streaming Products, third party tracking technologies (*e.g.*, Pixels, web beacons, etc.) transmitted that Class Member's private information to third parties. While Class Members may not have requested or obtained the same video materials from Defendant, the transmission of the private information occurred in precisely the same way. Compl. ¶¶ 32-34, 40-47, 70-76. Accordingly, Plaintiffs' claims are typical because

Plaintiffs were subject to the same conduct as the other Class Members, and they are alleged to have suffered the same injury as a result.

**Adequacy.** The adequate representation requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To meet this requirement, the representative 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lucas*, 2017 WL 6733688, at *6 (quoting *Amchem Prods., Inc.*, 521 U.S.at 625-26). Additionally, "[t]he representative's claims and interests cannot conflict with those of the class and he must 'have a sufficient interest in the outcome of the case.'" *Id*. (quoting *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015)). In addition, class counsel must be "experienced and competent." *Id.*

First, Plaintiffs have no interests in conflict with those of the Settlement Class. Specifically, Plaintiffs and Settlement Class Members are equally interested in obtaining relief for Defendant's alleged misconduct, and for ensuring that Defendant reforms its business practices. Moreover, throughout the pendency of this action, Plaintiffs have adequately and vigorously represented their fellow Class Members. They have spent significant time assisting their counsel, including by providing pertinent information regarding their Crunchyroll subscription and Facebook account information. Joint Declaration of Brandon M. Wise and Michael L. Murphy In Support of Class Action Settlement ("Decl."), ¶ 18. These same facts support Plaintiffs' appointment as Class Representatives for the Settlement Class.

Second, Class Counsel have extensive experience litigating, trying, and settling class actions, including consumer privacy cases like this one. Decl., ¶¶ 17, 26-33, Attachment 1 and 2. Courts across the country have recognized Class Counsel's experience in complex class litigation and their skilled and effective representation. *Id.* Class Counsel had sufficient information at their

disposal before attempting to negotiate a class settlement so that Class Counsel had no doubt they could adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of litigation. *Id.* ¶¶ 19-22. In sum, Class Counsel is "experienced and competent." *Lucas*, 2017 WL 6733688, at *6.

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1). *See generally,* Decl. & Attachments 1 & 2.

### ii. The Requirements of Rule 23(b)(3) are satisfied

**Predominance.** For certification under Rule 23(b)(3), class members must share common issues of fact or law that predominate over questions affecting individual members. FED. R. CIV. P. 23(b)(3). If common questions are a "significant aspect" of a case and "can be resolved for all members of a class in a single adjudication," then predominance is satisfied. *Lucas*, 2017 WL 6733688, at *7 (citation omitted). "Predominance is qualitative, not quantitative." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). A plaintiff seeking certification under Rule 23(b)(3) does not need to prove that each element of her claim is susceptible to class wide proof. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015) (citing *Amgen, Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013)). "Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Defendant's uniform conduct

that allegedly harmed all Class Members. Specifically, Plaintiffs allege that Defendant knowingly utilized the third party tracking technologies to disclose Class Members' identities and video viewing history to Meta, Google, Adobe, and others, and that conduct uniformly injured Plaintiffs and the other Class Members' legally protected interests under the VPPA. In other words, Plaintiffs allege that all Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing, and the issues affecting every Settlement Class Member are substantially the same. This case thus falls within the "types of cases are uniquely well-suited to class adjudication"—*i.e.*, those based on uniform violations of common statutory rights. *See*, *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010).

**Superiority.** Rule 23(b) (3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Where, as here, there are tens of millions of potential class members with small claims resulting from a common issue, a class action is the most feasible mechanism or resolving the dispute. "Courts have recognized that the class action device is superior where the defendant engaged in standardized conduct and the individual class members' claims would be too small to vindicate through an individual suit." *Lucas*, 2017 WL 6733688, at *7, and *see, Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008).

Here, class resolution is superior to other forms of resolution for two reasons. First, the Defendant's Terms of Service purport to have an agreement to arbitrate disputes, meaning that, without Defendant's consent to proceed in court, each individual action would have to be litigated in an arbitral forum. Second, given the relatively modest amounts at issue, individual proceedings would be inefficient and the cost of litigating such a technically complex matter would be cost prohibitive, especially when weighed against the possible recovery. As such, class proceedings are the superior method of adjudication.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment

on the proposed Settlement under Rule 23(e).

**b. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate**

Preliminary approval is appropriate where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2). FED. R. CIV. P. 23(e); 2018 Amendment Advisory Committee Notes. Specifically, Rule 23 requires district courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Here, the proposed Settlement, negotiated by competent and experienced counsel who vigorously represented the interests of the Settlement Class, satisfies Rule 23(e).

**i. The Settlement Class has been vigorously represented**

Plaintiffs' interests are aligned with the interests of the Class Members: they share identical objectives of establishing liability and obtaining damages. *See* Section IV.A.1.d, *supra*.

Plaintiffs have cooperated fully with their counsel in representing the proposed Class, staying informed about the case, keeping in contact with counsel, and submitting information necessary for informal discovery efforts. *See* Decl., ¶ 18.

Plaintiffs' counsel, by the same token, have vigorously represented the Class and will continue to do so after preliminary and final approval of the Settlement (if approved). *See*

*generally* Decl. ¶¶ 8–17, 18; Section IV.A.1.d, *supra*. Plaintiffs' counsel have vigorously litigated the case to date, including: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing the legal arguments raised by Defendant to Class Counsel; (iii) preparing amended complaints; (iv) gathering Plaintiffs' relevant information; (v) preparing mediation statements; (vi) requesting and reviewing relevant informal discovery during mediation; (vii) working with forensic experts to understand the technology at issue in this matter, including how third party web tracking technology was deployed on Defendant's Streaming Products; (viii) participating in mediation and extensive subsequent settlement discussions; and (ix) achieving a very favorable Settlement on behalf of the Settlement Class. Decl., ¶ 17. Additionally, Class Counsel have no conflicts of interest with the Class. Accordingly, this factor weighs in favor of preliminary approval.

### ii. The Settlement was negotiated at arm's length after the exchange of informal discovery

The best evidence of a "truly adversarial bargaining process" is the "presence of a neutral third-party mediator." 4 *Newberg* § 13:50, *see also*, *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022), *appeal dismissed,* No. 22-1686, 2022 WL 19575674 (7th Cir. Aug. 22, 2022)

Here, the parties engaged in multiple private mediation sessions before the Honorable Morton Denlow (Ret.), an experienced and well-respected mediator, to assist them in reaching the proposed Settlement. They prepared and reviewed detailed mediation statements and other supporting materials before participating in the first day-long mediation with Judge Denlow. Decl., ¶¶ 11-14. Only after months of additional, determined negotiations, a second day of mediation with Judge Denlow, and further continued negotiations after the second day of mediation did the parties reach an agreement in principle. Decl., ¶¶ 11-14. These efforts were unquestionably at arms-length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were *not* negotiated separately, there is *no* "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Defendant.

Further, although formal discovery did not take place, the parties informally exchanged information during the mediation. That information included direct communications between counsel regarding Defendant's data bearing on the merits of Plaintiffs' claims, the size of the class, and Defendant's ability to satisfy an adverse judgment. Decl., ¶¶ 19-22. Plaintiffs' counsel— attorneys with considerable experience in assessing the strengths and weaknesses of data privacy cases—came away from the mediations well-informed about the strengths and risks of the claims, as well as their value. *Id*. In sum, the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement.

### iii.   The Settlement provides meaningful relief to the Class

Class Counsel believes that this Settlement is the largest VPPA-Pixel settlement to date, providing a non-reversionary settlement fund of $16,000,000 and prospective changes to prohibit any further VPPA violations by Defendant.

Through informal discovery, the parties estimate that Settlement Class to be approximately 19.5 million. Assuming 70% of those users also had Facebook accounts,[3] that 61.2% did not have software that blocked third party tracking technology,[4] and that 4% of eligible Class Members will submit claims,[5] *pro rata* payments from the Settlement Fund after administration expenses,

---

[3] *See, e.g.*, Pew Research Center, *Social Media & News Fact Sheet* (Sept. 20, 2022) (estimating 70% of U.S. adults use Facebook), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/(last accessed September 8, 2023).

[4] Ad Blocker Usage and Demographic Statistics in 2023, https://backlinko.com/ad-blockers-users (finding 38.8% of United States internet users aged 18-64 utilize ad blocking software).

[5] Plaintiffs use a 4% claims rate for illustrative purposes only.  Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants.  One analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our

attorneys' fees and costs, and service awards would amount to approximately $30 to each claimant. That benefit alone would be substantial—and comparable to what plaintiffs recently have obtained in other VPPA cases. *See, e.g.*, *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023), Doc No. 52 (Prelim. Approval Order) (assuming 10%–20% claims rate, estimating $22–$44 payment to each claimant); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 18-md-02843 (N.D. Cal. July 11, 2023), Doc No. 1145 (Mot. for Final Approval) (preliminary estimate of $35 average payment to claimants for release of numerous claims, including under the VPPA). This result is better than could realistically be achieved by any other approach.

The relief provided through the proposed Settlement is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. *See* Fed. R. Civ. P. 23(e)(2)(i)–(iv).

**Risks of further litigation.**

Although Plaintiffs are confident in the strength of their claims, they nevertheless recognize that this novel litigation is inherently risky. Claims applying the VPPA to operation of the web tracking tools like the Facebook Pixel and web beacons are still relatively untested. Courts have both granted and denied motions to dismiss in substantially similar cases, but no similar case has yet proceeded to class certification, summary judgment, or let alone trial. Should litigation

---

sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. (last accessed Sept. 8, 2023).

continue, Plaintiffs would have to conduct formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and pursuing subpoenas against third parties like Meta, Google, Adobe, and other large tech companies. Assuming Plaintiffs prevailed in court, Plaintiffs then would likely have to secure an affirmance on appeal before recovering damages. Ultimately, continued litigation could add several more years before there is a resolution, and that resolution is in no way guaranteed to be in Plaintiffs favor.

**Proposed method of distributing relief.** The Settlement outlines a comprehensive direct notice plan, and supplemental public notice program. Email notice will provide notice directly to Settlement Class Members at the email address which they used to create and access their accounts with Defendant. Furthermore, the claims process will be hosted primarily online, and allow for streamlined and efficient claims filings. Settlement, ¶ 4-5. Additionally, payment will be made efficiently through digital payment methods to those Settlement Class Members who so prefer.

**Attorneys' Fees.**

Plaintiffs' counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). Specifically, in accordance with the Settlement terms, Plaintiffs' counsel anticipate requesting that the Court award a total Fee Award, comprising both an award of attorneys' fees and reimbursement of expenses, not to exceed one-third of the common Settlement Fund for fees. *See* Settlement ¶¶ 1.13, 8.1. Such a request would be well within the range of approval customary in groundbreaking consumer privacy litigation and within the range commonly awarded by courts in this District.

Moreover, Plaintiffs' will petition the Court for service awards for their time, dedication, and excellent result achieved of $5,000 per Plaintiff. *Id.* ¶ 8.3. Such an award is also routine, and well-deserved here.

Other agreements. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement.

### iv.  The Settlement treats Class Members equitably

The proposed Settlement establishes a common fund, from which payments will be distributed to Settlement Class Members that submit valid claims on a *pro rata* basis. *See* Section III.B, *supra*. The Settlement does not provide preferential treatment to Plaintiffs or any segments of the proposed Settlement Class. The injunctive relief provided by the settlement, moreover, will equally benefit all members of the Settlement Class. *See* Section III.C, *supra*.

This factor thus weighs in favor of preliminary approval.

### v.  Plaintiffs' counsel are highly experienced in similar litigation and their opinion regarding Settlement is entitled to considerable weight

As discussed above in Section IV.a.i. Plaintiffs' counsel have extensive experience litigating and settling complex consumer class actions throughout the country, including those concerning data privacy. *See also* Attachments 1 and 2 to Decl. Based on their collective experience, Plaintiffs' Counsel conclude that the Settlement provides exceptional results for the Class— particularly given the significant risks outlined above – while avoiding the costs, delays, and uncertainties of continued litigation. *See id.* Counsels' opinion is entitled to "significant weight" and further supports a preliminary presumption of fairness. *See*, *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *8 (N.D. Ill. Feb. 28, 2012).

### c.  The Proposed Notice Plan Should Be Approved

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV.

P. 23(e)(1)(B).  Where seeking certification of a Rule 23(b) (3) settlement class, the notice must also comply with Rule 23(c) (2)(B), which requires "[a]t a minimum" that the notice

> inform class members of "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Rule 23 and constitutional due process require that the settlement class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *14. Further, the notice must inform class members of their right to exclude themselves from the settlement and not be bound by any judgment of the court.

The proposed notice plan here meets all appliable standards. The notice plan includes direct notice to all Settlement Class Members via the e-mail they used to subscribe to or otherwise sign up for Crunchyroll services; the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the long-form Class Notice, and other key case documents; and the establishment of a Toll-Free Number where Settlement Class Members can get additional information.  *See* Declaration of Scott M. Fenwick; *see also id.* ¶ 32. Moreover, the proposed forms of notice (*see* Settlement, Exs. B & C) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B).  In addition, the Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Class and to direct financial payments to Class Members without requiring the submission of additional documents.  *See* Settlement, Ex. A (Claim Form). Accordingly, the Court should approve the proposed notice and claim plan.

18

## V.     <u>PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL</u>

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow them an opportunity to exclude themselves or file comments or objections, and hold a final approval hearing. In accordance with the preliminary approval order submitted herewith, Plaintiffs request the Court set the following schedule:

| Date | Event |
|---|---|
| Settlement Administrator shall commence notice of Settlement Class Members | Upon entry of Preliminary Approval Order |
| Last day for Plaintiffs and Class Counsel to file motion for attorneys' fees, expenses, and service awards | October 26, 2023 |
| Exclusion / Objection deadline | November 27, 2023 |
| Deadline for Plaintiffs to file motion for final approval of settlement | December 7, 2023 |
| Deadline to complete Claims submission | December 12, 2023 |
| Final Approval Hearing | December 19, 2023 (or on a date convenient to the Court) |

## VI.     <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval. A Proposed Order granting preliminary approval of the Settlement, certifying the Settlement Class, and appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.


Dated: September 21, 2023        Respectfully Submitted:

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
73 W. Monroe, 5th Floor

19

Chicago, IL 60604
T: 312-444-0734
bwise@peifferwolf.com
aflorek@peifferwolf.com

Michael L. Murphy (NY 5084397)*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW Suite 540
Washington, DC 20007
T: 202.494.3531
mmurphy@baileyglasser.com

Patrick Muench
**BAILEY & GLASSER LLP**
318 W. Adams St., Ste. 1512
Chicago, IL 60606
T: 312.500.8680
pmuench@baileyglasser.com

*Counsel for Plaintiffs and the Putative Class*

*admitted pro hac vice


### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF efiling system, which wil provide notice and allow access to all counsel of record.

*/s/ Brandon M. Wise*