UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SALVADOR BELTRAN, JR., and ELI GROSS, *Individually and on behalf of all others similarly situated,* <br><br> *Plaintiffs*, <br><br> v. <br><br> SONY PICTURES ENTERTAINMENT INC., d/b/a CRUNCHYROLL <br><br> *Defendant*. | **Case No:** 1:22-cv-04858 <br><br> **Judge:** Sara L. Ellis <br><br> **JURY TRIAL REQUESTED** |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

Plaintiffs Salvador Beltran, Jr. and Eli Gross, as well as their Class Counsel, Peiffer Wolf Carr Kane Conway & Wise, LLP and Bailey & Glasser LLP, move this court for approval of attorneys' fees and service awards, as provided for in the now preliminarily approved class action Settlement. (Docs. 46-1, 49). For the reasons stated herein, Plaintiffs and Class Counsel request that this motion be granted as part of final approval of the Settlement.

**I.     INTRODUCTION**

Class Counsel, Peiffer Wolf Carr Kane Conway & Wise, LLP and Bailey & Glasser LLP, respectfully move for an award of attorneys' fees and costs of one-third of the $16,000,000.00 Settlement Fund or $5,333,333.33. In addition, Class Counsel move for an award of a service payment of $5,000.00 to the Class Representatives Salvador Beltran, Jr. and Eli Gross ("Class Representatives" or "Named Plaintiffs") in recognition of the risks they undertook and the time they expended on behalf of the Settlement Class. The requested amounts are consistent with those

awarded by other Illinois federal and state courts in class action settlements resolving similar class privacy-focused matters.

Class Counsels' efforts have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. Ex. A, Declaration of Brandon M. Wise ("Wise Decl.") ¶ 17. Class Counsel's efforts have resolved this action before incurring the expense of extensive and lengthy class action litigation, trial, and probable appeals, which has preserved judicial resources and benefitted the class.

## II. BACKGROUND

### A. Class Counsel Performed Substantial Work in this Case and Achieved Significant Results for the Class.

Class Counsel was able to efficiently resolve this case on a class-wide basis through hard work, grueling negotiations, and commitment of a significant portion of firm resources to this matter. Class Counsel filed the original Class Action Complaint against Defendant Sony Group Corporation. (Doc. 1). The complaint was amended to name Sony Entertainment Pictures, Inc. ("Defendant") as the operative defendant. (Doc. 9).

After the filing of the First Amended Class Action Complaint, the parties agreed to a briefing schedule regarding for a proposed motion to dismiss. Later, however, that deadline was extended, and Class Counsel filed a Second Amended Class Action Complaint naming Plaintiffs Salvador Beltran, Jr. and Eli Gross.

On February 16, 2023, the Parties filed a joint motion to stay pending mediation. (Doc. 23). The first day of mediation took place on April 19, 2023. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day. However, because the Parties felt they had made progress toward resolution, they agreed to extend the stay to continue their mediation efforts.

Over the next several weeks, the Parties engaged separately with Judge Denlow via phone calls and then participated in a second day of mediation with Judge Denlow. At the conclusion of the second day of mediation, the Parties felt that there was a realistic possibility of reaching a class wide settlement. Through additional rounds of arms' length negotiations, the Parties were eventually able to reach agreement on all material terms of a class action settlement.

Plaintiffs moved for and were granted preliminary approval of the Class Action Settlement reached with Defendant. (Docs. 46, 49). As part of the Court's Preliminary Approval of the settlement, a settlement class was certified, Peiffer Wolf and Bailey Glasser were appointed class counsel, Salvador Beltran, Jr. and Eli Gross were appointed as Class Representatives; notice was authorized to be sent, and certain dates were set. (Doc. 49).

    **B.**    **Class Counsel Agreed to a Reasonable Percentage of the Settlement Amount as Compensation for the Risks They Took in Prosecuting This Action and Notified Class Members of this Arrangement through Class Notice.**

Class Counsel entered into a retainer with Plaintiffs allowing Class Counsel to apply for a reasonable percentage of the recovery as a contingency fee payment, plus actual out of pocket expenses. Wise Decl., ¶ 18. Consistent with this agreement, the Settlement provides that Class Counsel may apply for one-third of the Settlement Fund, or $5,333,333.33. (Class Action Settlement Agreement, Doc 46-1, ¶ 8.1). Class Counsel are not seeking independent reimbursement of costs of litigation, Class Members have been notified of these terms, and the proposed service payment to the Class Representatives, in the Notice of Proposed Settlement of Class Action Lawsuit ("Class Notice"). (Doc. 46-1, pp. 37-46). The Class Notice also informed Class Members of their right to object and described the procedures for asserting such objections. *Id.* As of the date of this filing, no Class Member has objected to the settlement. Wise Decl., ¶ 14.

## III. ARGUMENT

### A. An Award of Fees and Costs Is Allowed Under the VPPA.

As a threshold matter, prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, may be entitled to reasonable attorneys' fees and costs under the VPPA. *See* 18 U.S.C. §2710(c)(2)(C) ("The court may award… reasonable attorneys' fees and other litigation costs reasonably incurred."). Accordingly, Plaintiff is permitted by statute to receive reimbursement for reasonable attorneys' fees.

### B. The Court Should Award Attorneys' Fees from a Percentage of the Fund.

The Court should award attorneys' fees as a percentage of the total fund made available to the class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247-48 (7th Cir. 2014); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). The percentage of the fund method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)) (internal quotation marks omitted); *see also Boeing*, 444 U.S. at 478 (court prevents inequity "by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit").[1]

---

[1] Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating

It is especially appropriate to use a common fund approach to the fee award in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . ." *Skelton*, 860 F.2d at 256; *Florin*, 34 F.3d at 564. Here, the Settlement Fund has been created in exchange for the release of the Class Members' claims under the VPPA, both for statutory damages and attorneys' fees and costs. *See* 18 U.S.C. § 2710(c)(2)(A) and § 2710(c)(2)(C).

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, it promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). Courts in this district routinely apply the percentage method to common fund

---

"the reasonableness of a fee cannot be assessed in isolation from what it buys"). The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making); *see also Bryant v. Loews Chicago Hotel, Inc.*, No. 1:19-cv-03195, Dkt. 77 (N.D. Ill. Oct. 30, 2020); *Dixon v. Smith Senior Living*, No. 1:17-cv-08033, Dkt. 103 (N.D. Ill. Aug. 20, 2019).

  **C.**  **Attorneys' Fees and Costs Should be Approved as Fair and Reasonable.**

    **1.**  **The benefits conferred upon the class justify the fee award.**

This Settlement will provide the Class with substantial relief, including cash payment(s). First, all Settlement Class Members who do not opt out will be guaranteed an equal share of the $16,000,000.00 portion of the Settlement Fund. Here, no class members have objected to the settlement and only two (2) have requested exclusion. Wise Decl., ¶ 14. Based on an estimated claims rate similar to other nationwide privacy class actions, Class Counsel estimates that, should the request for fees, expenses, and costs be approved, each Class Member will a payment in the range of $20-$40 (acknowledging, however, that this amount is variable and dependent on the claims rate, which can vary widely based on a multitude of factors).

In addition to the monetary relief, the non-monetary benefits created by this Settlement— Defendants agreement to modify its use of the Facebook Pixel and other tracking pixels or tracking technologies so that use of such technologies will not result in Crunchyroll's disclosure to the technology developers of the specific video content viewed by a specific individual — also merit approval. (Doc. 46-1, §2.2) The prospective relief will ensure that millions of individuals' rights

are protected going forward and aligns perfectly with both the goals of the VPPA and those of this lawsuit. It will ensure that past, current, and future Crunchyroll subscribers are protected as the legislature intended.

Importantly, the Settlement serves the purpose of the VPPA by vindicating rights of those the statute was enacted to protect. In addition, Class Members were able to easily make claims on the Settlement Fund, including the ability to make claims with only an attestation of that member's status as a Class Member. Further, the Settlement does not present any hint of collusion, as it was resolved only after multiple mediation sessions with Judge (Ret.) Morton Denlow of JAMS. During the pendency of this matter, from pre-litigation, involved research into the VPPA and the rapidly evolving case law in this area, technological analysis of the underlying tracking technologies at issue, including work with multiple experts, analysis of the strength and weaknesses of Plaintiffs' claims and Defendant's defenses, including investigation into Defendant's policies and practices regarding the disclosure of personally identifiable information, and the exchange of information and informal discovery regarding settlement. Wise Decl. ¶¶ 8-12.

**2. Continued litigation presented a significant risk to the class.**

Continued litigation would pose significant risks. While Plaintiffs believe they would prevail on their claims, Class Counsel faced significant legal hurdles in attaining class certification and in proving liability and damages. On liability, Plaintiffs would have to overcome Defendant's defenses, including those arising under the statutory text of the VPPA and Plaintiffs' consent to various third parties' terms of use and service, as well as defenses to any recovery of damages, and possibly other affirmative defenses. Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of

7

litigation, such confidence is often misplaced"). Furthermore, even if Plaintiffs prevailed in the District Court, Defendant would likely appeal, introducing further litigation risk and delay.

### 3. There Are No Objections to Class Counsel's Request for Fees.

Class Members have the opportunity to object to Class Counsel's fees before the deadline for objections. *See* Fed. R. Civ. P. 23(h). The Class Notice notifies Class Members of the percentage of the Settlement Fund that Class Counsel intends to seek for attorneys' fees and costs. (Doc. 46, pp. 37-46). The Class Notice also informed Class Members that they may object to the settlement and/or to the attorneys' fees sought. (*Id.*). As of the time of this filing, zero Class Members objected to the Settlement, and only two (2) Class Members excluded themselves. Wise Decl., ¶ 14. Additionally, there have been over 134,000 claims submitted, as of this filing. The strong participation in the Settlement and lack of opposition demonstrates overwhelming support from the Class of this record-setting Settlement.

### 4. Analysis of the market for legal services supports class counsel's request.

Courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They "must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

Here, Class Counsel's request is based on the market in the Northern District of Illinois, where class action lawyers routinely contract to receive one-third or more of any settlement in all

types of common fund matters as compensation for the risk of funding a potential multi-year litigation without any assurance of recovery. Wise Decl. ¶ 19; *see also, e.g.*, *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (awarding attorneys' fees of one-third of the settlement fund in a hybrid FLSA collective action and state law class action); *McCue v. MB Fin., Inc.*, No. 15-CV-988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (same); *Campbell*, 2012 WL 1424417 at *2 (approving award of one-third of settlement plus costs in FLSA collective action); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (awarding one-third of the settlement fund and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery").

Class Counsel are nationally recognized for their expertise in litigating complex class and collective actions. Wise Decl., ¶ 4. This is exemplified thorough this Settlement, the largest VPPA-Pixel settlement by far. As such, Class Counsel is justified in seeking compensation in the form of one-third of the Settlement Fund for their efforts in litigating the case, their commitment to a difficult case, and their remarkable result. Class Counsel and the Named Plaintiffs agreed that Class Counsel would request a reasonable percentage any future recovery. Wise Decl. ¶ 18. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Class Counsel to be compensated by the method Class Counsel now seek.

9

Class Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. Class Counsel took this case on a contingent basis, meaning that there was a substantial risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).[2]

### D. The Class Representatives Should Be Awarded a Service Payment for Their Efforts in this Litigation.

The Class Representatives request a service payment of $5,000.00 each for their significant contributions to the prosecution and resolution of the lawsuit. Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g., Espenscheid*, 688

---

[2] While this matter was resolved by Class Counsel, Class Counsels' commitment to this and similar VPPA-Pixel matters is exemplified by their work in appealing adverse decisions. *See, Salazar v. Nat't basketball Ass'n*, Appeal No. 23-1147 (2nd Cir.) and *Salazar v. Paramount Global*, Appeal No 23-5748 (6th Cir.).

10

F.3d at 876-77; *Cook*, 142 F.3d at 1016. In examining the reasonableness of a requested service payment, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

The role of the Class Representatives in this litigation was crucial. The Class Representatives sacrificed their time to aid in the prosecution of this lawsuit on behalf of their fellow Class Members. Wise Decl. ¶ 24. Each Class Representative reviewed, provided feed back on, and ultimately approved the Class Action Complaints in which they were named. *Id*. They met, conferred, and corresponded with Class Counsel on a regular basis, and provided information about their particular situations promptly when required. *Id*. In short, the Class Representatives provided invaluable information and assistance to Class Counsel which provided for the successful conclusion of this lawsuit. *Id.*

Therefore, Class Counsel request a separate service payment of $5,000.00 to each of the Class Representatives in addition to any *pro rata* share of the settlement fund to which they are entitled. This amount comports with service payments recently awarded to named plaintiffs in other privacy class actions. *See, e.g.*, *Johns v. Club Fitness of Alton, LLC, et al.*, No. 2018 L 0080 (Cir. Ct. Madison Cty. Oct. 14, 2020); *Dixon v. The Washington & Jane Smith Home, et al.*, No. 1:17-cv-08033 (N.D. Ill. Aug. 20, 2019)

V.     **CONCLUSION**

For all of the foregoing reasons, Class Counsel respectfully request that the Court grant their Motion for Approval of Attorneys' Fees and Service Award to the Class Representatives as part of the final approval of the Class Action Settlement, including:

(1) awarding Class Counsel attorneys' fees and costs in the amount of $5,333,333.33;

(2) awarding a service payment in the amount of $5,000.00 to each of the Class Representatives, in addition to the share of the settlement fund to which they are entitled; and

(3) Any other relief the Court deems fair and reasonable.

Dated: October 26, 2023      Respectfully Submitted:

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
73 W. Monroe, 5th Floor
Chicago, IL 60604
T: 312-444-0734
bwise@peifferwolf.com
aflorek@peifferwolf.com

Michael L. Murphy (NY 5084397)*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW Suite 540
Washington, DC 20007
T: 202.494.3531
mmurphy@baileyglasser.com

Patrick Muench
**BAILEY GLASSER LLP**
318 W. Adams St., Ste. 1512
Chicago, IL 60606
T: 312.500.8680
pmuench@baileyglasser.com

*Counsel for Plaintiffs and the Putative Class*

*admitted *pro hac vice*

12

**Certificate of Service**

      The undersigned hereby certifies that on this day, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF e-filing system, which will provide notice and allow access to all counsel of record.

                                        */s/ Brandon M. Wise*
                                        Brandon M. Wise