## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SALVADOR BELTRAN, JR.,<br>and ELI GROSS,<br>*Individually and on behalf of all others*<br>*similarly situated,* | **Case No:** 1:22-cv-04858 |
| *Plaintiffs*, | **Judge:** Sara L. Ellis |
| v. | **JURY TRIAL REQUESTED** |
| SONY PICTURES ENTERTAINMENT<br>INC.,<br>d/b/a CRUNCHYROLL | |
| *Defendant.* | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
## <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

       a.  The Litigation .......................................................... 2

       b.  Mediation, Second Mediation, and Settlement of the Matter ............... 3

III.    KEY TERMS OF THE SETTLEMENT ................................................ 4

       a.  Class Definition ....................................................... 4

       b.  Monetary Relief ....................................................... 5

       c.  Business Practice Changes .............................................. 5

       d.  Release ............................................................... 5

       e.  Notice and Administration .............................................. 6

       f.  Service Awards, Attorneys' Fees, Costs, and Expenses ..................... 7

IV.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 ........ 8

V.     THE SETTLEMENT SHOULD BE FINALLY APPROVED .............................. 8

       a.  The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e) .......... 8

          i.  The Settlement Provides Substantial Relief
            given the Strenght of Plaintiffs' Claims and
            the Attendant Risks (First Factor). ..................................... 9

          ii.  Litigation Through Trial Would be Complex,
            Costly, and Long (Second Factor). ..................................... 12

         iii.  The Reaction of the Class Has Been Overwhelmingly
            Positive (Third Factor). .............................................. 14

         iv.  Competent Counsel for All Parties Endorse
            this Agreement (Fourth Factor). ....................................... 15

          v.  Discovery Has Advanced Far Enough to Allow
            the Parties to Resolve the Case Responsibly (Fifth Factor). ................ 16

VI.    CONCLUSION ................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898,
2012 WL 651727 ............................................................................................... 9

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305, 315 (7th Cir. 1980).............................................................. 11, 15

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ................ 15

*Czarnionka v. The Epoch Times Assn.*, Inc., No. 22-cv-6348 (S.D.N.Y) .................... 15

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) ................ 13

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ........................ 9-11

*Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) ........................ 9

*Gautreaux v. Pierce,* 690 F.2d 616 (7th Cir. 1982) ........................ 15

*Goldsmith v. Tech Sols. Co.*, No. 92 C 4374,
1995 WL 17009594, (N.D. Ill. Oct. 10, 1995). ........................ 12

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Illinois*,
988 F. Supp. 1130 (N.D. Ill. 1997) ........................ 14

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................ 12

*In Re: Tiktok, Inc., Consumer Privacy Litigation*,
No. 20-cv-4699 (N.D. Ill.) ........................ 15-16

*In Re: Vizio, Inc., Consumer Privacy Litigation*, No. 16-ml-2693 (C.D. Cal.) ........................ 16

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ........................ 8, 9, 14-15

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) ........................ 9

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ........................ 8

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ........................ 15

*Pichlet v. UNITE,* 775 F. Supp. 2d 754 (E.D. Pa. 2011) ........................ 13

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ........................ 13

*Salazar v. National Basketball Assn.*, No. 23-1147 (2nd Cir.) ........................ 10

*Salazar v. Paramount Global*, No. 23-5748 (6th Cir.) ........................ 10

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................... 11, 14

*Seiden v. Nicholson*, 72 F.R.D. 201 (N.D. Ill. 1976) ...................................................... 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ........................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 8

**Statutes**

18 U.S.C. § 2710, Video Privacy Protection Act ............................................................. 2, 4 -5, 13

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................................... 8, 9

*Newberg On Class Actions*, § 11.41 ......................................................................... 15

iv

## I.    INTRODUCTION

On September 20, 2023, this Court preliminarily approved the class action settlement between Plaintiffs Salvador Beltran, Jr. and Eli Gross ("Plaintiffs") and Defendant Sony Pictures Entertainment, Inc. d/b/a Crunchyroll ("Defendant")[1] and directed that notice be sent to the Settlement Class (ECF Nos. 48-49). The Settlement Administrator[2] has implemented the Court-approved notice plan more than 50,000,000 emails were sent to the certified Settlement Class. The reaction from the class has been overwhelmingly positive. Specifically, of the 19,581,200 potential Settlement Class Members, **zero** have objected and only sixteen (16) requested to be excluded.

The Settlement's strength speaks for itself: it creates a $16,000,000 all-cash, non-reversionary Settlement Fund from which each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share. And, equally important, as part of the Settlement, Defendant has agreed to meaningful prospective relief as it has suspended operation of the Facebook Tracking Pixel on video pages that transmit information to third parties, and has agreed to modify other tracking technologies so that use of such technologies will not result in Defendant's disclosure to the technology developers of the specific video content viewed by a specific individual, unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, a U.S. federal district court in Illinois, or an Illinois

---

[1] The Parties acknowledge that Sony Pictures Entertainment Inc. was incorrectly named as the Defendant in the above-captioned matter. Sony Pictures Entertainment Inc. is a separate corporation from Crunchyroll, LLC and is not a party to the Settlement Agreement.

[2] The Settlement Agreement is available at ECF No. 46-1. Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

state court of general jurisdiction), or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed.

The Settlement is a product of a thorough pre-filing investigation, efficiently prosecuted litigation, and extensive arm's-length negotiations between the Parties, including a mediation with the Honorable Morton Denlow (Ret.) – formerly of the Northern District of Illinois and now a mediator at JAMS (Chicago). (Joint Declaration of Brandon M. Wise and Michael L. Murphy in Support of Final Approval of Class Action Settlement ("Counsel Decl."), ¶ 8-17) The Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy Due Process and the procedural requirements of FED. R. CIV. P. 23. For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### a. The Litigation

This matter was originally filed as a putative class action on September 8, 2022, centering on Defendant's alleged disclosure of its subscribers' personally identifiable information to Facebook without permission in violation of Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"). (ECF No. 1).

Procedurally, a First Amended Complaint was filed on October 27, 2022. (ECF No. 9). In response to the First Amended Complaint, the Parties agreed on a briefing schedule for Defendant's motion to dismiss. (ECF No. 14). On January 31, 2023, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint naming Plaintiffs Salvador Beltran, Jr. and Eli Gros, which was granted, and the Second Amended Complaint was entered on the docket. (ECF Nos. 21, 22). Throughout the fall and winter of 2022, Class Counsel and counsel for Defendant had numerous phone calls, video meetings, and exchanged information so that each side could better

understand the position of the other side relating to the underlying technologies at issue, potential merits and class certification-based defenses, and the potential damages that Defendant could face if Plaintiffs were successful in litigation.

In February 2023, the Parties agreed that mediation with an experienced mediator could be helpful in attempting to reach a resolution of the matter, and a motion to stay was filed. (ECF No. 23). The Parties selected Judge Morton Denlow (Ret.) of JAMS Chicago, former United States Magistrate Judge for the Northern District of Illinois, to mediate the matter.

> **b.      Mediation, Second Mediation, and Settlement of the Matter**

As part of the mediation, and in order to competently assess their relative negotiating positions, the Parties exchanged information, including on issues such as the size and scope of the putative class, and certain facts related to the strength of Defendant's potential defenses. Given the information exchanged, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

The first day of mediation took place on April 19, 2023. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement that day. However, because the Parties felt they had made progress toward resolution, they agreed to extend the stay to continue their mediation efforts.

Over the next several weeks, the Parties engaged separately with Judge Denlow via phone calls and then participated in a second day of mediation with Judge Denlow. At the conclusion of the second day of mediation, the Parties felt that there was a realistic possibility of reaching a class wide settlement.

Through additional rounds of arms' length negotiations, the Parties were eventually able to reach agreement on all material terms of a class action settlement.

On August 28, 2023, Plaintiffs filed a Third Amended Complaint which conformed the allegations of the Third Amended Complaint to the information learned through informal discovery. The material allegations of the Third Amended Complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics in violation of the VPPA. (ECF No. 44). Then, on September 15, 2023, Plaintiffs moved for preliminary approval of the Settlement, which this Court granted on September 20, 2023. (ECF No. 48).

### III.   KEY TERMS OF THE SETTLEMENT

The key terms of the Class Action Settlement Agreement, available at ECF No. 46-1, are briefly summarized below:

#### a.   Class Definition

The Settlement defines the "Settlement Class" as:

> all persons in the United States who: (1) were registered users of an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by Crunchyroll; and (2) who viewed videos on an online website, mobile app, or any video-on-demand service or app owned, controlled, and/or operated by Crunchyroll during the Class Period.

Settlement, ¶ 1.30.

> Additionally, individuals excluded from the Settlement Class include:

> (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

*Id.*

**b.    Monetary Relief**

Defendant has agreed to pay $16,000,000 to create a non-reversionary Settlement Fund
for the Benefit of the Settlement Class. *Id*. ¶¶ 1.32, 2.1. Settlement Class Members who submit
valid claims will receive *pro rata* monetary payment from the Settlement Fund after deduction of
settlement-related costs, including the expenses of the settlement administrator and the costs of
notice to the Settlement Class, any court awarded expense reimbursements, attorneys' fees, and
service awards for the Class Representatives. *Id*. ¶¶ 1.2, 2.1.

**c.    Business Practice Changes**

As part of the Settlement, Defendant has also agreed to implement meaningful business
practice changes designed to remediate the alleged violations of the VPPA going forward. To
wit:

> Defendant will use good faith efforts, within 45 days of the Preliminary Approval
> Order but in no event later than the date of the Final Judgement, to modify its use
> of the Facebook Pixel and other tracking pixels or tracking technologies so that use
> of such technologies will not result in Crunchyroll's disclosure to the technology
> developers of the specific video content viewed by a specific individual, unless and
> until the VPPA is amended, repealed, or otherwise invalidated (including by
> judicial decision on the use of website pixel technology by the United States
> Supreme Court, any federal court of appeals, a U.S. federal district court in Illinois,
> or an Illinois state court of general jurisdiction), or until Defendant obtains VPPA-
> compliant consent for the disclosure of the video content viewed. Nothing herein
> shall prohibit the use of the tracking pixels or other technologies where any
> disclosure of information does not identify specific video materials that a specific
> user has requested or obtained.

*Id*. ¶ 2.2.

**d.    Release**

In exchange for the relief described herein, Plaintiffs and the Settlement Class shall
release all claims that have or could have been asserted against Defendant relating to the facts,

transactions, or events alleged in the Third Amended Complaint. *Id.*, ¶ 1.24 (Released Claims), ¶¶ 1.25-1.26 (Released Parties and Releasing Parties), ¶¶ 3.1-3.2 (Release).

> **e.    Notice and Administration**

The Parties engaged Kroll Settlement Administration LLC ("Kroll"), to provide notice of the Settlement to the Class via e-mail, to track exclusions and objections, and to administer payments to the class members, which may be done via physical check or via a variety of digital payment methods (Venmo, PayPal, etc.) (*See generally*, Declaration of Scott M. Fenwick (Fenwick Decl.") Defendant provided to Kroll a list of Class Members, which encompassed 19,581,200 current and former Crunchyroll subscribers identified as Settlement Class Members with corresponding email addresses ("Class List").[3] (Fenwick Decl. ¶ 5).

On September 25, 2023, Kroll received one (1) data file from the Defendant.  The file contained 19,581,200 email addresses for Settlement Class Members. Kroll undertook several steps to reconcile and compile the eventual Class List for the email of Notices. No duplicate records were identified, leaving all 19,581,200 records as unique. (Fenwick Decl. ¶ 5)

On September 20, 2023, Kroll created a dedicated settlement website entitled www.crvppasettlement.com (the "Settlement Website").  The Settlement Website "went live" on October 4, 2023, and contains a summary of the settlement, frequently asked questions, settlement documents (including the Class Action Complaint, First, Second and Third Amended Class Action Complaints, the Preliminary Approval Order, the Settlement Agreement, long form Notice, and Claim Form) and allowed Settlement Class Members an opportunity to file a Claim Form online. (Fenwick Decl. ¶ 6)

---

[3] Notably, Defendant's class list did not contain a single duplicate value. (Fenwick Decl. ¶ 5)

On October 4, 2023, Kroll caused the email Notice to be sent to the 19,581,200 email addresses on file for Settlement Class Members, as noted above. Of 19,581,200 emails attempted for delivery, 2,449,813 emails were rejected/bounced back as undeliverable. (Fenwick Decl ¶ 9) On October 30, 2023 Kroll sent a reminder email to 16,991,742 email addresses on on file for Settlement Class Members who had not yet filed a claim and whose initial email had not bounced back or was otherwise rejected. (Fenwick Decl. ¶ 10) Further, on November 21, 2023 Kroll sent a second reminder email to 16,870,103 email addresses on file for Settlement Class Members who had not yet filed a claim and whose initial email had not bounced back or was otherwise rejected.

Moreover, at the direction of Class Counsel and Defendant's Counsel, Kroll ran the rejected/bounced back emails through an email change of address search in an effort to locate secondary email addresses for Settlement Class Members whose email was rejected or bounced back on the initial email Notice. This search delivered 219,602 secondary email addresses for Settlement Class Members. On November 21, 2023, Kroll caused 219,602 email Notices to be sent to these secondary email addresses. (Fenwick Decl. ¶ 12).

As of December 6, 2023, Kroll has received 1,152 Claim Forms through the mail and 326,732 Claim Forms filed electronically through the Settlement Website. Kroll is still in the process of reviewing and validating Claim Forms. (Fenwick Decl. 13)

### f.    Service Awards, Attorneys' Fees, Costs, and Expenses

Consistent with the Federal Rules of Civil Procedure and the Preliminary Approval Order, Class Counsel filed a motion seeking approval of attorneys' fees (Class Counsel agreed to not seek separate reimbursement of litigation costs, a strong indicia of reasonableness) and service awards for each named Plaintiff. (ECF No. 50). For the reasons stated in that filing, Plaintiffs and Class Counsel request that, as part of the Final Approval Order, reasonable attorneys' fees and service awards be approved.

IV. **THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23**

Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23 (c)(2)(B).

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice by e-mail to the Class Members meets the requirements of Rule 23(c)(2)(B). (*See* § III.e, *supra*, Fenwick Decl., *generally*, including the Exhibits C and D attached thereto).

V. **THE SETTLEMENT SHOULD BE FINALLY APPROVED**

a. **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. FED. R. CIV. P. 23(e). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). As set forth in detail below, the proposed settlement is fair, reasonable and adequate

under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the VPPA and, thus, should be approved.

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

### i. The Settlement Provides Substantial Relief given the Strength of Plaintiffs' Claims and the Attendant Risks (First Factor).

Defendant has agreed to settle this case for $16,000,000.00 in monetary relief, as well as significant prospective business changes. (ECF No 46-1, Settlement, ¶ 2.2) The Settlement Fund shall be used to pay (i) Settlement Class Members' claims; (ii) a Service Award to the Class

Representatives ($5,000.00 each, if approved); (iii) the Fee Award ($5,333,333.33, if approved); and (iv) the Administrative Expenses (approximately $562,000.00, if approved). This leaves a Net Settlement Fund of approximately $10,094,666 and an estimated payment to each Participating Class Member of approximately $30.94[4] Importantly, Class Counsel secured a streamlined claims process for Settlement Class Members, which required only an attestation of membership in the Settlement Class. (ECF No 46-1, Ex. A, Claim Form) Here, no class members objected to the settlement and only sixteen (16) requested exclusion.[5] (Fenwick Decl. ¶ 16-17). This is a substantial settlement that represents significant value, particularly given the attendant risks of litigating the merits of the case through pleadings motions, Rule 23 class certification, summary judgment practice and/or trial, and any appeals of decisions on those matters.[6] Counsel Decl. ¶¶ 21-22. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the

---

[4] At the time of this filing, the Settlement Administrator is still accepting Claims from Settlement Class Members and will continue to do so through December 12, 2023. As such, this amount remains subject to change. Plaintiffs' Counsel, pursuant to this Courts' Order requesting a status report with the final class size, claims rate, and comparison of this Settlement's claims rate versus other similar settlements (ECF No. 48), will file a Joint Status Report on December 15, 2023 with this requested information and information that is as up to date as possible.

[5] As a matter bearing on individual privacy, the 16 individuals who have requested exclusion are identified by their Claimant ID.

[6] The risk of appellate practice in cutting-edge VPPA-Pixel cases is not a superfluous prospect. Class Counsel are involved in two VPPA related appeals. *Salazar v. National Basketball Assn.*, No. 23-1147 (2nd Cir.)(appealing dismissal of VPPA class action under Fed. Civ. R. P. 12(b)(6)) and *Salazar v. Paramount Global*, No. 23-5748 (6th Cir.) (same).

parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this matter is far from certain. In addition to any defenses on the merits Defendant would raise, Plaintiffs would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

While Plaintiffs believe they would likely prevail on their claims, they are also aware that Defendant has expressed a firm denial of her material allegations and the intent to pursue a number of substantial legal and factual defenses, including those arising under the stautory text, whether

Plaintiffs consented to various third parties' terms of use and/or service, as well as defenses to any recovery of damages, and other traditional affirmative defenses. If successful, any of these defenses could result in Plaintiffs and the proposed Settlement Class receiving no payment whatsoever. This risk is readily apparent, given the number of other legal and factual issues that have gone untested to date without final controlling legal authority. Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member in the Settlement represents a truly excellent result for the Settlement Class.

The proposed Settlement thus ensures that the Settlement Class Members will receive significant monetary relief and receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the risks associated with proceeding in the Action, including the timeline to do so, the Settlement is reasonable. Therefore, this factor weighs in favor of approval.

### ii. Litigation Through Trial Would be Complex, Costly, and Long (Second Factor).

The Second Factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The Settlement here allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part

of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years more of litigation at every phase of this case—all of which would pose the possibility of significant stumbling blocks for this Class. Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Assuming that the Settlement Class would ultimately have been certified (and that Plaintiffs would have defeated a summary judgment motion), the case would have proceeded to trial where the Parties are likely to litigate a horde of complex issues that, in light of the VPPA limited litigation history – especially in the context of Pixel technology – are either still being resolved by the courts or are matters of first impression. *See, e.g., Pichlet v. UNITE,* 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of the complexity of future litigation on issues of first impression). Again, although Plaintiffs believe in the strength of their claims—a risk that Defendant also clearly appreciated in light of this groundbreaking Settlement— further litigation poses risks on both sides.

Moreover, continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits to Settlement Class Members.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in dozens of depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third* Bank, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### iii. The Reaction of the Class Has Been Overwhelmingly Positive (Third Factor).

The absence of objections any Settlement Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). With a settlement class comprised of more than 19 million people, the lack of any objection is truly outstanding. (Fenwick Decl. ¶ 17) Additionally, only sixteen Settlement Class Members chose to exclude themselves from the Settlement, also an amazing result. (Fenwick Decl. 17). Thus, this factor also favors approval of the settlement.

iv.     **Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).**

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce,* 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The Settlement was reached after intense negotiation over the course of several months including two rounds of mediation with an experienced and well-respected mediator, Hon. Morton Denlow (Ret.). In short, it took the Parties months of considerable effort, mediator intervention, and hard-fought negotiation to reach the detailed terms of the Settlement now before the Court. (Counsel Decl. ¶¶ 8-17)

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* § 11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. (Counsel Decl. ¶¶ 25-29; ¶¶ 30-32) Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. (Counsel Decl. ¶¶ 19-22) Simply put, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. (Counsel Decl. ¶¶ 22) First, the monetary relief provided far exceeds relief in other similar class settlements. *Compare*, *Czarnionka v. The Epoch Times Assn.*, Inc., No. 22-cv-6348 (S.D.N.Y) (settlement of VPPA-Pixel litigation after denial of Rule 12(b)(6) motion for

injunctive relief only); *In Re: Tiktok, Inc., Consumer Privacy Litigation*, No. 20-cv-4699 (N.D. Ill.) ($92 million settlement for approximately 89 million class members, with multiple claims at issue, and Illinois Biometric Information Privacy Act claims getting large increase over claims like VPPA). Additionally, in a similar VPPA matter, *In Re: Vizio, Inc., Consumer Privacy Litigation*, the Central District of California approved a $17 million for a class of approximately 16 million consumers. No. 16-ml-2693 (C.D. Cal.). Second, a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. Third, and finally, the injunctive and prospective measures provided for in the Settlement ensure that Class Members are protected going forward. This factor therefore weighs in favor of final approval.

v.      **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This complex class action was resolved after extensive legal and factual research, multiple consultations with Plaintiffs' experts, the informal exchange of information between the Parties, additional consultations with Plaintiffs' experts after receiving information from Defendant, and after extensive negotiations including two mediation sessions with well-respected mediator Hon. Morton Denlow (Ret.) of JAMS. *See* Counsel Decl. ¶¶ 9-10, 17.

While the matter had not proceeded through pleadings motions on the docket, this should not detract from the work of counsel in working to advance the litigation to a state where Class Counsel could fairly and fully evaluate the value of the Settlement. *Id*. Given the significant amount of time and resources spent by the Parties exchanging information, responding to informal inquiries from the other side, and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

16

**VI.**    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully requests that the Court grant their Motion for Final Approval of Class Action Settlement and enter the Final Order and Judgment submitted herewith.

Dated: December 7, 2023

By: */s/ Brandon M. Wise*
Brandon M. Wise – IL Bar # 6319580
Adam Florek – IL Bar # 6320615
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
73 W. Monroe, 5th Floor
Chicago, IL 60604
T: 312-444-0734
bwise@peifferwolf.com
aflorek@peifferwolf.com

Michael L. Murphy (NY 5084397)*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW Suite 540
Washington, DC 20007
T: 202.494.3531
mmurphy@baileyglasser.com

Patrick Muench
**BAILEY GLASSER LLP**
318 W. Adams St., Ste. 1512
Chicago, IL 60606
pmuench@baileyglasser.com

*Counsel for Plaintiffs and the Putative Class*

*admitted pro hac vice

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed with the Clerk of the Court on this date using the CM/ECF e-filing system, which will provide notice and allow access to all counsel of record.

17

*/s/ Brandon M. Wise*
Brandon M. Wise